No. 13-40878
Consolidated with 14-40545

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT


In the Matter of: ISBELL RECORDS, INCORPORATED,
Debtor.

--------------------------------------

ALVERTIS ISBELL, doing business as Alvert Music,
Plaintiff-Appellee,

v.

DM RECORDS, INCORPORATED,
Defendant-Appellant.


Appeals from the United States District Court
for the Eastern District of Texas
Sherman Division

_____

REPLY BRIEF FOR APPELLANT
_____

CONNIS O. BROWN, III
BROWN ROBERT, LLP
California Bar No. 214182
Florida Bar No. 641960
150 N. Federal Hwy., Ste. 200
Fort Lauderdale, Florida 33301
Telephone: (954) 832-9400
Facsimile: (954) 832-9430

TABLE OF CONTENTS

TABLE OF AUTHORITIES _____#ii

ARGUMENT _____#1

I.   APPELLEE FAILED TO REFUTE THAT IT WAS
     ERROR FOR THE TRIAL COURT TO TAKE FROM
     THE JURY DISPUTED FACTUAL ISSUES CREATED
     BY CONFLICTING TESTIMONY AS TO THE
     INTERPRETATION OF THE CONTRACT IN
     DETERMINING OWNERSHIP _____#1

II.  THE COURT COMPOUNDED ITS FAILURE TO
     PERMIT THE JURY TO DETERMINE OWNERSHIP
     OF THE SONGS BY PERMITTING THE JURY TO
     AWARD MR. BELL 100% OF THE COPYRIGHT
     PROCEEDS DESPITE THE COURT'S FINDING THAT
     MR. BELL WAS ONLY A 50% OWNER _____#6

III. THIS IS A DISPUTE BETWEEN CLAIMED OWNERS
     OF THE COMPOSITION COPYRIGHT, NOT A THIRD
     PARTY INFRINGEMENT CASE WITH A DEFENSE OF
     THE PLAINTIFF'S LACK OF OWNERSHIP _____#7

IV.  MR. BELL'S LACK OF STANDING TO PURSUE THE
     INFRINGEMENT CLAIM AGAINST DM RECORDS
     SHOULD RELIEVE DM RECORDS FROM THE
     JUDGMENT _____#9

V.   CONCLUSION _____#11

# TABLE OF AUTHORITIES

## CASES

*Diaz v. Methodist Hosp.*, 46 F.3d 492 (5th Cir. 1995) _____ #10

*Edward B. Marks v. Jerry Vogel Music, Co.*, 140 F.2d 268
    (2nd Cir. 1944) _____ #6

*In re Roberts*, 376 Fed. Appx. 398 (5th Cir. 2010) _____ #9, 10

*KB Home v. Antares Homes*, No. 3-04-CV-1031
    (N.D. Tex. June 28, 2007) _____ #7, 8

*Lyric Studios, Inc. v. Bid Idea Prods., Inc.*,420 F.3d 388 (5th Cir. 2005)__ #8

*Quintanilla v. Texas Television, Inc.*, 139 F.3d 494 (5th Cir. 1998) _____ #5

*Willig v. Exiqon, Inc.*, 2012 WL 10375 (C.D. Cal. Jan. 3, 2012)_____ #1, 5

## STATUTES

Cal.Civ.Code § 1641 _____ #5

Cal.Code.Civ.Proc. § 1858 _____ #5

## ARGUMENT

**I.    APPELLEE FAILED TO REFUTE THAT IT WAS ERROR FOR THE TRIAL COURT TO TAKE FROM THE JURY DISPUTED FACTUAL ISSUES CREATED BY CONFLICTING TESTIMONY AS TO THE INTERPRETATION OF THE CONTRACT IN DETERMINING OWNERSHIP.**

Nowhere in Mr. Bell's response does he refute DM Records'
contention that the Trial Court erred in taking a key factual determination in
the case away from the jury despite the fact that there was conflicting
evidence which should have been resolved by a jury.  California law is clear
that "when 'ascertaining the intent of the parties at the time the contract was
executed depends on the credibility of extrinsic evidence, that credibility
determination and the interpretation of the contract are questions of fact that
may properly be resolved by the jury.'"  *Willig v. Exiqon*, Inc., 2012 WL
10375 *6 (C.D. Cal. Jan. 3, 2012) (citing *City of Hope Nat. Medical Center
v. Genetech Inc,* 43 Cal.4th 375, 395 (2008)).  Only in cases where there are
no material conflicts in the extrinsic evidence should the court interpret the
contract as a matter of law.  *Id*.  This was not the case here.  There were
numerous conflicts in the extrinsic evidence regarding the ownership of the
composition copyright which should have been decided by the jury.

Rather than attempt to justify this deviation from settled California
authority on the point, the Appellee contends that the interpretation of the

1

"and 50%" clause of the Composition Assignment[1] was not argued at trial and hence should not have been addressed by the jury, was not the proper subject of a Rule 50(b) motion, and should not be considered on appeal.  In reality, DM Records' position that the assignment in the second paragraph of the Composition Assignment[2] can only be to Bellmark has been consistently addressed with the Trial Court in both the Motion for Directed Verdict[3] and at the argument on that Motion during trial.[4]  This was a critical point argued at trial, with DM Records' counsel stating that "in order for Mr. Isbell to prevail, he must show that it is clear."[5]  The Judge responded "[y]ou know, I would agree with you.  There's got to be a better way to write these agreements here,"[6] (which implicitly concedes that the assignment remained unclear to the Trial Court).

After the Trial Court lamented the lack of clarity of the provision and DM Records' counsel pointed out the conflicting evidence on the issue, DM Records' counsel properly stated that the issue "should go to the jury."[7] Unfortunately, the Trial Court believed that under California law the Trial Court must make such a decision, but then in actuality never decided the

---

[1] ROA.14-40545.171
[2] ROA.14-40545.171
[3] ROA.14-40545.7238
[4] ROA.14-40545. 10875-10879
[5] ROA.14-40545.10884-10885
[6] ROA.14-40545.10885
[7] *Id.*

issue at all.  Instead, the Trial Court instructed the jury that "[t]he Court found as a matter of law that Defendant does not now have, and it has never had, an ownership interest in the musical composition copyright for Whoomp! (There It Is)."[8]   The Court also "found as a matter of law that Plaintiff was and is an owner of a 50 percent interest in the copyright in the musical composition Whoomp!"[9] without any explanation of who owns the "and 50%" assignment.  Far from arguing issues not raised at trial, DM Records' two biggest points of pre-judgment error arose within twenty pages of transcript.[10]

By claiming that this factual dispute was "never raised at trial", the Appellee is attempting to avoid conceding before this Court that the "Assignee" of the rights granted by the second paragraph must be Bellmark, as he was forced to do at trial.[11]  In a similar vein, the Appellee repeatedly says that DM Records' principal testified that Tag Team continued to own 50% of Whoomp! despite the assignments.  Review of the referenced citations does not support that position.  Appellee claims, on pages 30 and 33 of the Response Brief for Appellee, that one of DM's principals stated that Tag Team owned 50% of Whoomp! but both references cite to Mr.

---

[8] ROA.14-40545.11054 (Lines 1-4)
[9] ROA.14-40545.11053 (Lines 21-23)
[10] ROA.14-40545.10875-10888
[11] ROA.14-40545.10881 (Lines 22-23)

Bell's cross examination.  That is because the principals of DM Records

never made such a statement.  However, diligent review of the record

instead reveals the following question and answer by Mark Watson, one of

the principals of DM Records, on cross-examination, which <u>does not</u>

attribute 50% to Tag Team:

> Q: "I understand - - I think we all understand your position that
> the written contracts with Tag Team conveyed the copyright
> compositions to Bellmark.  That's your belief, correct?  A:
> That's my honest, hundred percent, always, have never varied
> from that position since day one belief, yes, sir."[12]

On the other hand, Mr. Bell's testimony at trial is completely at odds

with the second paragraph of the Composition Assignment[13] which states:

> "and fifty percent (50%) of the right, title and interest of the
> undersigned Assignors, vested and contingent therein and
> thereto, subject to the terms and conditions of the Memorandum
> Agreement between Assignors and Assignee dated effective
> March 30, 1993 and for the term of the copyrights and all
> renewals and extensions thereof."[14]

The Composition Assignment defines "Assignors" as the Writers

and Tag Team Music, Inc., and the only other party to the March 30

Memorandum Agreement is Bellmark, hence Bellmark is the only possible

"Assignee" for that 50%.[15]  Once that point is understood it is obvious that

---

[12] ROA.14-40545.9742 (Lines 17-21)
[13] ROA.14-40545.171
[14] *Id.*
[15] *Id.*

the judgment must be reversed, because DM Records, which it is undisputed purchased all of Bellmark's rights,[16] thus has an assignment of the "Whoomp!" copyright.   That clear provision may not be ignored because California law requires that "[a] contract be construed as a whole, with the individual provisions interpreted together so as to give effect to all provisions, if reasonably possible or practicable." *Willig*, 2012 WL 10375 at * 5; Cal.Civ.Code, § 1641; Cal.Code Civ. Proc. § 1858.

California law requires that any attempt to construe the Composition Assignment must somehow include a 50% ownership right to DM Records, as Bellmark's conceded successor in interest[17], thus making it impossible as a matter of law for DM Records to infringe the "Whoomp!" copyright because "[a] co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright." *Quintanilla v. Texas Television, Inc.*, 139 F.3d 494, 498 (5th Cir. 1998).

---

[16] ROA.14-40545.9348 (Lines 9-12)
[17] ROA.14-40545.9348 (Lines 9-12)

## II.     THE COURT COMPOUNDED ITS FAILURE TO PERMIT THE JURY TO DETERMINE OWNERSHIP OF THE SONGS BY PERMITTING THE JURY TO AWARD MR. BELL 100% OF THE COPYRIGHT PROCEEDS DESPITE THE COURT'S FINDING THAT MR. BELL WAS ONLY A 50% OWNER.

The Trial Court found that DM Records was not and had never been an owner, and then allowed the case to go to the jury on damages without any instruction on what the potential damages award for a 50% owner would be.  The Appellees' expert admitted that a 50% share of all of the publishing money totaled $1,026,570[18], and that together with a 50% share of Whoomp! and a 33% share of Dazzey Duks[19], proceeds from all royalty collections total $1,124,243.  Therefore, the highest amount that Mr. Bell could possibly get a judgment for, according to his own expert, based on the Trial Court's finding of a 50% ownership interest in Mr. Bell, is thus roughly half what the jury awarded.  Why?  Because the jury did not know that they were only permitted to award  damages to Mr. Bell for his claimed 50% interest in the infringement, and that any damages attributed to a third party's ownership rights should not be a part of their verdict.  *E.g., Edward B. Marks v. Jerry Vogel Music Co*., 140 F.2d 268 (2nd Cir. 1944).

This black letter law was specifically explained to the Trial Court by counsel for DM Records, "[t]hat's not what the copyright act says.  The

---

[18] ROA.14-40545.10536 (Lines 13-25)
[19] ROA.14-40545.10538 (Lines 20-25); ROA.14-40545.10539 (Lines 1-5)

copyright act says that what he's entitled to is the piece attributable to the ownership of the composition. And what he owns is 50 percent, not one hundred percent. So --."[20] But the Court replied "[m]aybe if he got – well, you're right. But he's legally entitled to collect Tag Team's share and then do what's right with that share. It may be that it goes to Tag Team."[21] This was error by the Trial Court. Since the Trial Court's finding was that Mr. Bell owned 50% of the composition, the Judge should have instructed the jury that Mr. Bell was entitled to only 50% of whatever they found the infringement damages to be, but he did not do so despite dozens of pages of argument as to how the jury would be confused on this issue,[22] and despite Appellee's disingenuous (and successful) argument during closing which was deliberately calculated to take advantage of the erroneous instruction.[23]

## III.  THIS IS A DISPUTE BETWEEN CLAIMED OWNERS OF THE COMPOSITION COPYRIGHT, NOT A THIRD PARTY INFRINGEMENT CASE WITH A DEFENSE OF THE PLAINTIFF'S LACK OF OWNERSHIP.

Despite two full pages of discussion of *KB Home v. Antares Homes, Ltd.*, No. 3-04-CV-1031, (N.D. Tex. June 28, 2007), the Appellee fails to mention that the *KB Home* Court, after conducting a detailed review of

---

[20] ROA.14-40545.11008 (Lines 1-4)
[21] *Id.* at Lines 5-8
[22] ROA.14-40545.10964-10973; ROA.14-40545.10982-11015; ROA.14-40545.11030-11047
[23] ROA.14-40545.11069-11070

precedent on this subject, specifically <u>declined</u> to hold that the defendants in that case were barred from raising a copyright ownership defect as a defense to an infringement claim. *Id*. at 11. The Appellee also misses a key common point of *KB Home* and the similar decisions cited therein that the alleged infringers in those cases were "outsiders" to the transfer of ownership to the copyright in question. *E.g., Lyric Studios, Inc. v. Big Idea Prods., Inc*., 420 F.3d 388, 394 (5th Cir. 2005), *cert. denied*, 126 S.Ct. 1653 (2006). DM Records is the quintessential insider to the questioned transfer in this case. The Composition Assignment[24], upon which the Appellee premises his claim of assignment, was part of a contract between Bellmark (DM Records' predecessor in title) and the original writers.[25] The Appellee was Bellmark's President at the time he claims he diverted this copyright assignment to himself,[26] premised upon his claim to be the unnamed third-party beneficiary to the contract between the writers and Bellmark as first parties.[27] "Section 204(a) has three purposes: (1) to ensure that a copyright is not 'inadvertently transferred;' (2) to ensure precisely 'what rights' at 'what price' are being transferred; and (3) to resolve later disputes." *KB Home*, 2007 U.S. Dist. LEXIS 47273 at 8, quoting *Lyric Studios*, 420 F.3d at

---

[24] ROA.14-40545.171
[25] *Id.*
[26] ROA.14-40545.161
[27] ROA.14-40545.10000 (Lines 8-10)

392.  Unlike an infringement action involving a third party who has no claim of ownership to the copyright, this was an action for declaratory judgment in which Mr. Bell sought to try the issue of ownership among claimed owners of the copyright.[28]  As a result, this case centers upon these three issues, and is a perfect example of the reason for the court to have addressed Section 204(a) as a defense to the claim of infringement.

## IV.    MR. BELL'S LACK OF STANDING TO PURSUE THE INFRINGEMENT CLAIM AGAINST DM RECORDS SHOULD RELIEVE DM RECORDS FROM THE JUDGMENT.

Though Mr. Bell is now forced to admit that he signed the Irrevocable Assignment assigning all of his rights to the copyright to a third party, he tries to downplay the significance of both the Irrevocable Assignment and his non-disclosure of this key document.  The withholding of documents such as the 2006 Assignment is grounds for Rule 60 relief.

The Appellee cites *In re Roberts*, 376 Fed. Appx. 398 (5th Cir. 2010), as an example of case law supporting the principle that DM Records is not entitled to Rule 60 relief even if this court finds the assignment to be withheld by Mr. Bell, due to its availability in the Arkansas public records. In reality, the *Roberts* opinion does not factually support the withholding of documents by parties, and instead it focuses on the necessity of a claimant in

---

[28] ROA.14-40545.123

bankruptcy meeting its burden of proving its claim. *Id*. at 403. In the *Roberts* opinion the debtor was unfairly criticized by the lender for putting a copy of a promissory note stamped paid in full into evidence, but in reality the lender lost its claim because it did not meet the burden of proof on the amount of the debt, not because Roberts entered the cancelled note into evidence. *Id. Roberts* has no relationship to this case, in which the requested and not produced document shows the claimant lacks standing to sue in the first place.

Mr. Bell's non-produced assignment was properly called for in discovery and its non-production by Mr. Bell allowed this judgment to be entered by unfair means, which should now be corrected. As this Court explained in *Diaz v. Methodist Hosp*., 46 F.3d 492 (5th Cir. 1995), "Rule 60(b)(3) is not intended to correct those outcomes which may be factually incorrect, but rather to protect against a party prevailing by unfair means." *Id*. at 497. Though the Court did not find such facts to exist in *Diaz*, they do here because the Irrevocable Assignment deprived Mr. Bell of standing to bring the case at all. What could be more unfair than allowing a party who knows full well that he has assigned his right to sue to withhold the assignment from discovery and continue to sue and get a judgment? The consequence of the Irrevocable Assignment is necessarily severe. The

copyright statutes require standing for a recovery. Mr. Bell now takes the fallback position that the judgment can still be valid for pre-2006 damages, but in reality, the judgment must be reversed even if Mr. Bell had standing to sue for infringements occurring before the 2006 assignment because the judgment does not differentiate between pre and post-assignment damages.

## V.    CONCLUSION.

DM Records should receive a reversal of the judgment with a mandate to the trial court to dismiss this matter with prejudice for lack of standing, or at minimum for a new jury trial on contract interpretation, liability and damages and such other and further relief as to this Court appears just and proper, including costs and attorneys' fees.

Respectfully submitted,

**BROWN ROBERT, LLP**
Attorneys for DM Records, Inc.
Defendant/Appellant
150 N. Federal Highway, Suite 200
Fort Lauderdale, FL 33301
Telephone:  954-832-9400
Facsimile:   954-832-9430

/s/ Connis O. Brown, III
Connis O. Brown, III
California Bar No. 214182
Florida Bar No. 641960
E-Mail: cbrown@brownrobert.com

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of September, 2014, a true and correct copy of the foregoing was furnished by e-mail upon the following counsel:

Richard S. Busch
Andrew W. Coffman
KING & BALLOW
Tenn. No. 27160
1100 Union Street Plaza
315 Union Street
Nashville, TN 37201
Telephone: (615) 259-3456
Facsimile: (615) 726-5417
Email: rbusch@kingballow.com
Email: acoffman@kingballow.com
Attorney for Plaintiff-Appellee


William S. Helfand
CHAMBERLAIN HRDLICKA WHITE
WILLIAMS & MARTIN
1200 Smith Street, Ste. 1400
Houston, TX 77002
Telephone: (713) 654-9630
Facsimile: (713) 658-2553
Email: bill.helfand@chamberlainlaw.com
Attorney for Plaintiff-Appellee


/s/ Connis O. Brown, III
Connis O. Brown, III

CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.3, undersigned counsel certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B).

1. Exclusive of the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), this brief contains 2,421 words printed in a proportionally spaced typeface.

2. This brief is printed with proportionally spaced, serif typeface using Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes produced by Microsoft Office Word 2007 software.

3. Upon request, undersigned counsel will provide an electronic version of this brief and/or copy of the word printout to the Court.

4. Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Fed. R. App. P. 32(a)(7)(B), may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/s/ Connis O. Brown, III
Connis O. Brown, III